UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRACE KERN et al.,

    Plaintiffs,

v.

VIP TRAVEL SERVICES et al.,

    Defendants.
_____/

Case No: 1:16-CV-8

HON. JANET T. NEFF

## OPINION

Plaintiffs Brace Kern and Jessica Huigens bring this action under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, alleging that they received unsolicited phone calls to cell phone numbers that are listed on the national "do-not-call" registry. Before the Court are two motions to dismiss, one filed by Defendant AM Resorts, LP (referred to herein and in the complaint as "Secrets") (ECF No. 154), and one filed by Defendants Newport Hospitality, LLC and Newport Vacations, LLC (collectively, "Newport") (ECF No. 157). Also before the Court is Plaintiffs' motion to amend the complaint to add Newport Marketing, LLC as a defendant to the action (ECF No. 173). For the reasons stated herein, the motions to dismiss will be granted and the motion to amend will be denied.

**I.**

Plaintiffs are residents of Michigan. Newport is incorporated in Florida and owns a resort in Florida. Secrets is incorporated in Pennsylvania and owns resorts in the Dominican Republic, Jamaica, and Mexico. The TCPA makes it unlawful to make a call using an "automatic telephone dialing system or prerecorded device . . . to any telephone number assigned to a . . . cellular

telephone service." 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). Under FCC regulations, it is also unlawful to initiate a telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-no-call registry. 47 C.F.R. § 64.1200(c)(2).

Plaintiffs allege that they received several dozen telephone calls from VIP Travel Services and United Shuttle Alliance Transportation Corp. (collectively, "USA")[1] in January, February, and October of 2013 to their cell phone numbers, which are registered on the national do-not-call registry. When answering the calls, Plaintiffs heard an automated voice telling them, "Pack Your Bags! You've won a Disney vacation." (2d Am. Compl. ¶ 45, ECF No. 152.) The voice told Plaintiffs to press 1 to reach a representative. Plaintiffs did so, and they were told that they could purchase a discounted vacation package, but they had to verify their eligibility by meeting minimum age, income, and other requirements. Plaintiff Kern decided to purchase such a package, and he was directed to a website to complete a form to select his preferred dates of travel. After submitting the form, Kern received an email from USA encouraging him to visit USA's website and recommending that he look into Silver Lake or Summer Bay resorts. USA told Kern that he could visit any of the resorts listed on its website. Kern made reservations with USA to stay at three resorts, including Summer Bay Resort, Newport Beachside Resort,[2] and Villa Del Palmar. Plaintiffs allegedly received emails from these three resorts to confirm their reservations, but Plaintiffs did not confirm their

---

[1]According to the complaint, United Shuttle Alliance Transportation Corp. was doing business as USA Travel Services, and it is "in essence" a "single entity" with VIP Travel Services. (2d Am. Compl. ¶ 10, ECF No. 152.) The complaint refers to USA Travel Services and VIP Travel Services as "the Travel Agents," but the Court will refer to them both as USA. There are no specific allegations of conduct by VIP Travel Services that are distinct from the allegations against USA Travel Services.

[2]Newport Beachside Resort is owned by Newport.

reservations. Plaintiffs contend that the reservations would have required them to attend a presentation about owning property at the resorts.

Plaintiffs claim that the telephone calls made by USA violated the TCPA, and that Newport and Secrets (collectively, the "Resorts") are vicariously liable for these calls. Plaintiffs contend that the Resorts "manifested their assent" that USA act for them by:

> (1) accepting reservations from people who were unlawfully solicited, (2) sharing computer database reservation information with [USA] to allow [USA] to reserve available dates and provide reservation information to the Resorts, (3) permitting [USA] to include links to the Resorts' websites on [USA's] websites, and (4) controlling the content of the telemarketing call by scripting the questions that must be asked of the potential purchaser to verify the purchaser's ability to close on the sale of real estate.

(2d Am. Compl. ¶ 55.) Plaintiffs further allege that the Resorts contracted with USA to solicit customers, knowingly, recklessly, or negligently disregarding the fact that USA would violate the TCPA. Plaintiffs claim that the Resorts failed to investigate or take adequate measures to ensure that USA would not violate the TCPA, failed to rescind their contracts with USA after learning of TCPA violations, and failed to have links to the Resorts' websites removed after learning of USA's activity.

In support of their motion to add Newport Marketing, LLC as a defendant to this action, Plaintiffs rely on evidence that Newport Marketing entered into an agreement with USA to have USA sell vacation packages for a Newport resort to qualified customers, contingent upon the customer's participation in a timeshare presentation. (Marketing Agreement, ECF No. 148-1.)

## II.

Newport asserts that the Court lacks personal jurisdiction over it. In the alternative, it asserts that Plaintiffs' complaint fails to state a claim. Secrets also asserts that the complaint fails to state a claim. The Court must decide the issue of personal jurisdiction first. "A federal court may not

assume jurisdiction to decide the merits of a dispute; it must satisfy itself in the first instance that it has jurisdiction over the parties and the subject matter." *Miami Valley Fair Housing Ctr., Inc. v. Steiner & Assocs., Inc.*, 483 F. App'x 67, 70 (6th Cir. 2012). When the issue is raised, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Beydoun v. Wataniya Rest. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014).

The Court has three options for ruling on the motion to dismiss for lack of personal jurisdiction, it may: (1) "decide the motion upon the affidavits alone"; (2) "permit discovery in aid of deciding the motion"; or (3) "conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Where, as here, the court considers only the parties' written submissions, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists." *Id.* Regardless of the method employed to rule on the motion, the plaintiff cannot "rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise [,] . . . specific facts showing the court has jurisdiction." *Id.* (quotation omitted). When ruling on such a motion without conducting an evidentiary hearing, the Court must consider the pleadings and affidavits in the light most favorable to the nonmoving party. *Beydoun*, 768 F.3d at 504. Nevertheless, the Court may accept as true uncontroverted factual assertions of the defendant, provided they are "consistent with the representations of the plaintiff." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997).

In a federal-question case like this one, personal jurisdiction exists if the defendant would be subject to personal jurisdiction under the forum state's long-arm statute and if "'exercise of personal jurisdiction would not deny the defendant[ ] due process.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954

F.2d 1174, 1176 (6th Cir. 1992)). Due process concerns are governed by the standard articulated in *International Shoe* and its progeny: ensuring that a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

A. <u>General Jurisdiction</u>

Personal jurisdiction may be general or limited. Michigan's long-arm statute for general personal jurisdiction over a corporation provides that

> [t]he existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.
>
> (1) Incorporation under the laws of this state.
>
> (2) Consent, to the extent authorized by the consent and subject to the limitations provided in section.
>
> (3) The carrying on of a continuous and systematic part of its general business within the state.

Mich. Comp. Laws § 600.711.

The Newport entities (including Newport Marketing, LLC) have not been incorporated under the laws of Michigan, are not residents of Michigan, do not maintain any offices or employees in Michigan, and are not licensed or registered to conduct business in Michigan. (Hurowitz Aff., ECF No. 158-1.) Nevertheless, Plaintiffs assert that Newport conducts continuous and systematic business in Michigan, as evidenced by the fact that

> [USA] sent Plaintiffs['] qualifying information, including telephone recordings, to [Newport], Newport reviewed the Michigan resident's qualifying information and valid credit card before emailing [USA] to go ahead and confirm the reservation with

5

>these Plaintiffs. Upon receipt of [Newport's] reservation confirmation, [USA] mailed a confirmation package for [Newport] to these Plaintiffs' Michigan address. In addition, discovery will undoubtedly reveal numerous other reservations, and even timeshare purchases, by Michigan residents . . . .

(Pls' Response Br. 7., ECF No. 161.) In other words, Plaintiffs assert that Newport conducted systematic business in Michigan by receiving and responding to reservation requests from Plaintiffs, and probably others in Michigan. Even if this satisfies the requirements of Mich. Comp. Laws § 600.711(3), it is not sufficient to establish general jurisdiction for purposes of due process.

Due process prevents a court from asserting general jurisdiction unless a corporation's affiliations with the forum state are so "'continuous and systematic' as to render [the corporation] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). "A corporation's 'continuous activity of some sorts within a state,' . . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id.* at 927 (quoting *Int'l Shoe*, 326 U.S. at 318). For example, "mere purchases [in the forum state], even if occurring at regular intervals," is not enough to permit the exercise of general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). Plaintiffs have not alleged continuous and systematic activity by Newport sufficient to make Newport "at home" in Michigan. In *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), which is considered the "textbook case of general jurisdiction appropriately exercised," *Donahue v. Far Eastern Air Transport Cop.*, 652 F.2d 1032, 1037 (D.C. Cir. 1981), the forum state was the corporation's temporary place of business. *Perkins*, 342 U.S. at 447-48. In contrast, Plaintiffs have alleged only that some of Newport's customers, or potential customers, are from Michigan. Thus, the Court does not have general personal jurisdiction over Newport.

B. <u>Limited Jurisdiction</u>

As to limited personal jurisdiction, the relevant portion of Michigan's long-arm statute permits the exercise of limited jurisdiction in a suit "arising out of the act or acts which create any of the following relationships: . . . (1) [t]he transaction of any business within the state"; "(2) [t]he doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort"; or "(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant." Mich. Comp. Laws § 600.715. Plaintiffs rely on subsections (1) and (5). Subsection (1) is satisfied by "the slightest act of business in Michigan." *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988). Plaintiffs assert that Newport's receipt of their reservation, and then its email to USA expressing a willingness to accept their reservation, constitutes an act of business in Michigan sufficient to establish limited personal jurisdiction under Mich. Comp. Laws § 600.715(1). The Court disagrees. Plaintiffs' cause of action arises from the telephone calls that they received, not from Newport's receipt or acceptance of their reservations. *See Helicopteros*, 466 U.S. at 414 n.8 (noting that "a State exercises [limited] personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum").

Plaintiffs also rely subsection (5), referring to a marketing agreement between Newport Marketing, LLC and USA. Plaintiffs claim that Newport Marketing entered into a contract for services to be performed or materials to be furnished in Michigan. Plaintiffs assert that this contract is evidence of a "telemarketing scheme [between USA and Newport] that contemplated and desired qualified customers from Michigan." (Pls.' Br. 8.) Plaintiffs also assert that Newport Marketing is an alter ego of Newport. "The alter-ego theory of personal jurisdiction, in the parent-subsidiary context, provides that 'a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate

7

entities but are one and the same for purposes of jurisdiction.'" *Estate of Thompson ex rel. Estate of Rakestraw v. Toyota Motor Corp. World Wide*, 545 F.3d 357, 362 (6th Cir. 2008) (quoting *Danton v. Innovative Gaming Corp.*, 246 F. Supp. 2d 64, 72 (D. Me. 2003)). Plaintiffs note that Newport Marketing has the same mailing address, manager, and attorney as Newport.

Even assuming that Newport Marketing, LLC is an alter ego for Newport, the contract with USA does not provide for "services to be performed or for materials to be furnished in the state *by the defendant*," i.e., Newport. *See* Mich. Comp. Laws § 600.715(5) (emphasis added). Rather, the contract provides for marketing services to be performed by USA. Moreover, any services provided by Newport resulting from the sale of a vacation package would not be provided in Michigan. Thus, by itself, the agreement does not allow for the Court to exercise limited jurisdiction over Newport under Michigan's long-arm statute.

In addition, Plaintiffs have not established a *prima facie* case that the exercise of limited jurisdiction would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. The "constitutional touchstone" for the exercise of personal jurisdiction "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe*, 326 U.S. at 316). The Sixth Circuit has articulated a three-part test for determining the appropriateness of a federal court's exercise of limited personal jurisdiction: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco*

*Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). The defendant's conduct and connection to the forum state must be such that he "'should reasonably anticipate being haled into court there.'" *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (internal citation omitted).

As indicated, Plaintiffs have not alleged that Newport purposefully established minimum contacts in Michigan. Indeed, Plaintiffs do not allege that Newport took any action in relation to Michigan other than responding to a reservation request from Michigan residents. However, USA's telephone calls gave rise to this lawsuit, not Newport's response. The calls were made by a third party, USA. Moreover, Newport's response is not "purposeful availment." *See Witbeck v. Bill Cody's Ranch Inn*, 411 N.W.2d 659, 673 (Mich. 1987) (advertising in Michigan and sending a brochure in response to a request by a Michigan resident is not purposeful availment); *accord Mozdy v. Lopez*, 494 N.W.2d 356, 360 (Mich. Ct. App. 1992) ("limited personal jurisdiction may not be exercised on the basis of advertising campaigns regarding services to be performed out of state where the effect of the advertisements causes Michigan residents to leave the state").

Plaintiffs also claim that USA acted as Newport's agent when making the calls to Plaintiffs. A seller may be subject to personal jurisdiction for the acts of its agent. *See Johansen v. HomeAdvisor, Inc.*, No. 2:16-cv-121, 2016 WL 6432821, at *4 (S.D. Ohio Oct. 31, 2016). As discussed in Section IV *infra*, however, Plaintiffs' allegations are insufficient to establish that USA acted as Newport's agent. Moreover, as Newport notes, Plaintiffs' telephone numbers have New York area codes. They are not Michigan phone numbers. There is no indication that USA

9

purposefully directed any of its calls to Michigan. Thus, Plaintiffs have not satisfied their burden of establishing that the Court has personal jurisdiction over a claim against Newport. Accordingly, Newport will be dismissed for lack of personal jurisdiction.

## III.

Secrets asserts that Plaintiffs' complaint fails to state a claim. A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In ruling on a Rule 12(b)(6) motion to dismiss, the Court may only consider "the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and

exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV.

Under the TCPA, the party who makes or initiates a call not permitted by the statute is directly liable, but the TCPA also permits vicarious liability.

> Our rules have long drawn a distinction between the telemarketer who initiates a call and the seller on whose behalf a call is made. In accordance with those rules, . . . a seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer.

*In re DISH Network, LLC*, 28 F.C.C. Rcd. 6574, 6582 ¶ 24 (2013).

Plaintiffs assert that the Resorts are vicariously liable for the calls made by USA. An entity may be vicariously liable for TCPA violations "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.* at 6584. As the FCC has explained:

> The classical definition of "agency" contemplates "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." Potential liability under general agency-related principles extends beyond classical agency, however. A principal may be liable in circumstances where a third party has apparent (if not actual) authority. Such "[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Other principles of agency law may support liability in particular cases. For example, a seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits. Such ratification may occur "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences."

11

*Id.* at 6586–87 ¶ 34 (footnotes omitted). In other words, the Resorts may be liable for the actions of USA, if USA made the telephone calls as an agent of the Resorts within the scope of its actual or apparent authority, or if the Resorts ratified USA's actions.

A. Actual Authority

"An essential element of agency is the principal's right to control the agent's actions." *Id.* Restatement (Third) of Agency § 1.01 cmt. f(1). In particular, "[t]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Id.* "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id.* § 2.01.

In this case, nothing in the complaint permits a reasonable inference that the Resorts had the right to control USA, or gave actual authority to USA to make automated telephone calls in violation of the TCPA. Even if the Resorts contracted with USA to solicit customers, that does not mean that the Resorts had the right to control USA or conferred on them the authority to solicit customers through improper means.

In support of its motion to amend the complaint, Plaintiffs seek to add Newport Marketing, LLC as a defendant, based on a contract between Newport Marketing and USA. Plaintiff contends that Newport Marketing is an "alter ego entity" of Newport, created for the purpose of "absorb[ing] the liability for the anticipated violations of the TCPA that would arise" from entering into a telemarketing agreement with a "bogus travel agent." (Br. in Supp. of Mot. to Amend. 3, ECF No. 174.) However, the existence of a contract is not, in itself, sufficient to create an agency relationship.

*See Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015). Moreover, the contract between USA and Newport Marketing does not confer actual authority on USA to make calls in violation of the TCPA. To the contrary, the contract expressly provides that: USA is an independent contractor and that Newport Marketing does not have a right to control USA; USA has full power and authority to select the means of performing its work without detailed direction or control from Newport Marketing; USA will comply with all applicable laws, including federal "Do Not Call" laws; and USA will comply with Newport Marketing's do-not-call policy. (Marketing Agreement, ECF No. 148-1.) Based on this contract, USA could not have reasonably believed that Newport had given it authority to make calls to Plaintiffs in violation of the TCPA.

B. <u>Apparent Authority</u>

"[U]nder the theory of apparent authority, a principal will incur liability for the acts of an 'agent' if the principal 'held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority.'" *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 374 (6th Cir. 2015) (quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998)). "'The apparent power of an agent is to be determined by the act *of the principal and not by the acts of the agent*[.]'" *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 663 (6th Cir. 2005) (quoting *Master Consol. Corp. v. BancOhio Nat'l Bank*, 575 N.E.2d 817, 822 (Ohio 1991)). According to the FCC:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's

13

telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*In re DISH Network*, 28 F.C.C. Rcd. at 6592 ¶ 46.[3]

In this case, there are no well-pleaded allegations that the Resorts gave USA access to detailed information about the Resorts' pricing, services, or customer information, or gave USA the ability to enter consumer information into the Resorts' systems. Although USA knew the price of the vacation package, and was able to determine the availability of specific resorts in order to initiate reservations, Plaintiffs were required to confirm their reservations directly with the Resorts themselves; USA could not finalize the reservation. There is also no allegation that the Resorts allowed USA to use their names, trademarks, or service marks (except to refer to the resort properties). Instead, Plaintiffs have alleged that the recorded call referred to a "Disney" vacation (though Disney has no apparent or alleged connection to the Resorts; in fact, Secrets' resorts are not located in Florida or California), and that USA directed Plaintiffs to a website with links to many resort properties, some of which are owned by Newport or Secrets. Although "this website may support an inference of a business relationship broadly, it simply does not imply an agency relationship and does not alone link [Defendants] to any particular calls." *Seri v. Crosscountry Mortgage, Inc.*, No. 1:16-cv-0214-DAP, 2016 WL 5405257, at *5 (N.D. Ohio Sept. 28, 2016).

The Court agrees with Plaintiffs that *Seri* is distinguishable from this case in some respects. In *Seri*, the telemarketer never mentioned the name of the seller and the plaintiff never alleged how

---

[3]The FCC has conceded that the foregoing guidance is not binding on the Courts, and is not entitled to deference under *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984). *DISH Network, LLC v. FCC*, 552 F. App'x 1 (D.C. Cir. 2014).

14

the website was related to the telephone calls made to the plaintiff. Here, Plaintiffs allege that USA specifically directed them to the website containing the Resorts' information. Nevertheless, as in *Seri*, it is "unclear how or why [Plaintiffs] believe [that Defendants]–as opposed to any other specific seller–was involved in any of the calls [they] received." *Id.* at *6. Indeed, in their previous version of the complaint, Plaintiffs sued over 50 resort owners, including Newport and Secrets, ostensibly because USA's webpage also listed resorts owned by those other entities. Plaintiffs' factual allegations in the prior version of their complaint did not distinguish one resort owner from another; the allegations lumped all of them together. Although Plaintiffs' second amended complaint does not include any resort owners other than Newport and Secrets, the complaint continues to lump them together in its allegations. It is not clear why Plaintiffs claim that Newport and Secrets, as opposed to any of the other resort owners whose properties were listed on USA's website, are vicariously liable for USA's actions toward Plaintiffs. In other words, even if Plaintiffs' allegations permit an inference that USA made telephone calls to solicit the sale of a product or service offered by the resorts identified on USA's webpage, they do not permit a reasonable inference that Newport or Secrets are vicariously liable for the particular calls that Plaintiffs received.

To establish a specific connection between USA and Secrets, Plaintiffs point to the fact that Secrets was mentioned in the boilerplate terms and conditions of USA's vacation package offer. The terms state that the participant must "attend a 90-minute or 120-minute (Secrets/Dreams), no-obligation, VIP preview of the resort during your stay at each destination. This program is designed for individuals or married couples with a household annual income of at least $50,000 or $75,000 for Secrets/Dreams." (ECF No. 152-6.) But all that these terms establish is that USA was aware of the specific conditions that Secrets required for accepting a vacation package at a Secrets resort, and

15

that those conditions were different from those at other resorts. In fact, USA presented these terms to Plaintiffs as part of a vacation package that did not include reservation with any resort owned by Secrets. Thus, these terms do not show that USA was acting as an agent for Secrets, with actual or apparent authority from Secrets, let alone that Secrets is liable for the calls that Plaintiffs received.

    C. Ratification

Plaintiffs also contend that Defendants "manifested their asset to" (i.e., ratified) the actions of USA by accepting reservations from customers who were unlawfully solicited. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1). A principal can ratify an act by "(a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* § 4.01(2).

Plaintiffs' ratification theory suffers from several problems. First, it does not apply to Secrets because Plaintiffs do not allege that Secrets took any action in response to the calls that Plaintiffs received. Plaintiffs allege that they made reservations to stay at three resorts. None of those resorts are owned by Secrets.

Second, the well-pleaded facts in the complaint do not permit a reasonable inference that the Resorts were aware of USA's allegedly unlawful solicitations. "A person who has ratified is not bound by the ratification if it was made without knowledge of material facts about the act of the agent or other actor." Restatement (Third) of Agency § 4.06 cmt. b. Accepting a reservation request from a customer does not in itself suggest that the Resorts were aware of the manner in which the reservation was obtained. An acceptance is not effective to ratify unless it is accompanied by "actual knowledge of material facts[.]" *Id.* § 4.06, cmt.b. Ratifying a reservation facilitated by USA is not

16

the same as knowingly ratifying the conduct leading up to that reservation. *Cf. Davis v. Mut. Life Ins. Co. of N.Y.*, 6 F.3d 367, 375 (6th Cir. 1993) (insurer ratified agent's fraudulent sales methods because it was aware of those methods).

Plaintiffs also contend that the Resorts recklessly disregarded the risk that USA would violate the TCPA, but this assertion is conclusory and unsupported. In the absence of actual knowledge, "[a] factfinder may conclude that a principal has made . . . a choice [to ratify] when the principal is shown to have had knowledge of facts that would lead a reasonable person to investigate further, but the principal ratified without further investigation." Restatement (Third) of Agency § 4.06 cmt. d. Here, there are no allegations from which to infer that the Resorts had sufficient knowledge of USA's allegedly unlawful telephone calls that would have led a reasonable person to investigate USA's actions further.

Third, without a pre-existing principal-agent relationship, ratification can create an agency relationship between the actor and the ratifier only if "the actor ha[s] acted or purported to act on behalf of the ratifier." *Id.* § 4.01 cmt. b. Plaintiffs do not allege that USA acted, or purported to act, on behalf of the Resorts. USA did not purport to act on behalf of the Resorts when advertising a Disney vacation, or when offering a vacation package at property owned by one of the Resorts. As discussed, USA merely offered a vacation package applicable to several resorts. In order to accept this package, Plaintiffs had to confirm their reservations with those resorts, and to pay resort fees directly to the resorts themselves. (2d Am. Compl. ¶¶ 56-57.)

In a variation on their ratification theory, Plaintiffs assert that the Resorts should be held vicariously liable because USA was acting for the benefit of the Resorts. However, "an action taken for the benefit of a seller by a third-party retailer, without more, is [not] sufficient to trigger the

17

liability of a seller under section either section 227(c) or section 227(b)." *DISH Network*, 28 F.C.C. Rcd. at 6593 ¶ 47. Ratification requires the "*knowing acceptance* of the benefits of a transaction[.]" Restatement (Third) of Agency § 4.01 cmt. d (emphasis added). In this case, the Resorts did not accept any benefits as a result of USA's actions, because Plaintiffs did not confirm their reservations or make any payments to the Resorts. Moreover, as already indicated, there are no well-pleaded allegations from which to reasonably infer that any acceptance would have been accompanied by knowledge of USA's allegedly unlawful calls. Thus, for all the foregoing reasons, the ratification theory does not help Plaintiffs here.

In short, Plaintiffs fail to state a claim of vicarious liability against Newport and Secrets because Plaintiffs have not alleged facts from which to infer an agency relationship. For similar reasons, the Court cannot exercise personal jurisdiction over Newport. Thus, Secrets will be dismissed for failure to state a claim and Newport will be dismissed for lack of personal jurisdiction.

## IV.

Plaintiffs have filed a motion to amend in which they seek to add Newport Marketing, LLC as a defendant, pursuant to Rules 15(a)(2), 19(a)(1), and 20(a)(2) of the Federal Rules of Civil Procedure. Plaintiffs have not offered a proposed version of a complaint that would include Newport Marketing as a Defendant, but the Court assumes that essentially the same allegations and theory of liability would apply to Newport Marketing as Plaintiffs have asserted against the Resorts. Plaintiffs claim that they intend to seek relief from Newport and Newport Marketing jointly and severally, and that the "same questions of law and fact" apply to all Newport defendants. (Br. in Supp. of Mot. to Amend 4, ECF No. 174.)

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend the complaint after a responsive pleading has been filed only by leave of the court, but requires that such leave "be freely granted when justice so requires." Fed. R. Civ. P. 15(a). In the absence of factors like "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave should be freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In this case, Plaintiffs have already filed three versions of their complaint. The third version does not state a claim against the Resorts. At a hearing on the motion for leave to file the second amended complaint, the magistrate judge indicated that it would be "inconceivable" that he would grant another motion to amend. (Mot. Hr'g Tr. 29, ECF No. 183-1.) In other words, Plaintiffs have had several opportunities to file a complaint that states a valid claim against the Resorts, but have been unable to do so. Since they filed their most recent version of the complaint, the only development is that they discovered the existence of a contract between USA and Newport Marketing, LLC.

But even if the Court allowed an amendment to join Newport Marketing, LLC to this action, that amendment would not save Plaintiffs' claim. In other words, amendment would be futile. The existence of a contract between USA and an entity related to Newport does not cure the deficiencies in Plaintiffs' complaint. For the reasons discussed, the contract does not provide any further support for Plaintiffs' claim that Newport (or its affiliate, Newport Marketing), can be held vicariously liable for USA's actions. The allegations do not permit a plausible inference that USA acted as an agent for Newport Marketing or the Resorts, or that the Resorts or Newport Marketing are vicariously

liable for the calls that Plaintiffs received. If anything, the contract weakens Plaintiffs' claim because the agreement expressly prohibits USA from violating the TCPA.

## V.

For the reasons stated, the Newport entities will be dismissed for lack of personal jurisdiction and AM Resorts, LP ("Secrets") will be dismissed for failure to state a claim. Plaintiffs' motion to add Newport Marketing, LLC as a defendant will be denied because amendment would be futile.

An order will be entered consistent with this Opinion.


Dated: May 10, 2017                                  /s/ Janet T. Neff
                                                     JANET T. NEFF
                                                     United States District Judge